UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
......................................................................X
In re:

       Michael Maidan,
       dba Grand Avenue Building II, LLC,           Chapter 11
       dba East End Ventures LLC,
       dba 1907 Harrison Realty LLC,            Case No.: 8-19-77027-las
       dba 550 Metropolitan LLC,
       dba 62 Grand Ave LLC,

                     Debtor.
------------------------------------------------------------x

MEMORANDUM DECISION AND ORDER GRANTING
THE LITIGATION TRUSTEE'S MOTION TO AUTHORIZE
TRUSTEE TO LIQUIDATE ASSETS OF THE DEBTOR'S ESTATE

Before the Court is the Motion to Authorize Trustee to Liquidate Assets of Debtor's

Estate and for Related Relief (the "Motion") of Eric Huebscher in his capacity as Trustee

under the Litigation Trust Agreement (the "Litigation Trustee"). [dkt. no. 246]. Specifically,

the Motion seeks the entry of an order authorizing the Litigation Trustee to liquidate the

interest of Michael Maidan (the "Debtor") in East End Ventures LLC, East End Ventures II

LLC, and East End Ventures III LLC (collectively, "East End Ventures") by appointing the

Litigation Trustee and Bernard Jaffe, Esq., the Executor of the estate of Emil Talel (the

"Executor"), as co-liquidators of East End Ventures. Jay Bialsky ("Bialsky") opposed the

Motion [dkt. no. 254], and the Litigation Trustee replied [dkt. no. 255].

The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C.

§ 1334(b) and the Standing Order of Reference entered by the United States District Court

for the Eastern District of New York pursuant to 28 U.S.C. § 157(a), dated August 28, 1986,

as amended by Order dated December 5, 2012.

The Court has carefully considered the parties' submissions and the arguments of counsel in connection with the Motion. For the reasons stated below, the Court grants the Motion.

Background[1]

A.    The Chapter 11 Case and Confirmation of the Plan

On October 11, 2019 (the "Petition Date"), the Debtor filed a petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").[2] Motion ¶ 11. The Debtor was a real estate developer and did business as either the sole member/owner of, and/or held financial interests in, several limited liability companies. *Id.* ¶ 12. In or around late March of 2020 the Debtor passed away and shortly thereafter his son, Joshua Maidan, took over the administration of the Debtor's chapter 11 case. *Id.*

On March 17, 2021, the Court entered an Order Confirming Debtor's First Amended Chapter 11 Liquidating Plan Pursuant to 11 U.S.C. § 1129 (the "Confirmation Order") [dkt. no. 149]. *Id.* ¶ 13. The First Amended Chapter 11 Liquidating Plan (the "Plan") [dkt. no. 136], among other things,  (1) establishes a litigation trust (the "Litigation Trust") for the benefit of the holders of Class 4 Unsecured Claims[3] under the Plan, (2) provides for the vesting of all of the Debtor's causes of action in the Litigation Trust as of the Plan effective date, (3) provides that the trustee of the Litigation Trust has absolute discretion to determine whether to bring, settle, release, compromise or enforce such causes of action, and (4) provides that the trustee of the Litigation Trust has the authority to pursue such

---

[1] The facts set out in this section are drawn from the parties' submissions and are undisputed except as otherwise noted.

[2] All statutory references to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will hereinafter be referred to as "§ (section number)."

[3] Capitalized terms not otherwise defined in this Decision shall have the meanings ascribed to such terms in the Plan.

2

litigation claims in accordance with the best interests of the Litigation Trust. *Id.* (citing Plan, Art. XI 11.1). The Plan also provides that the Distribution Fund includes recoveries, if any, from East End Ventures. *Id.* ¶ 14 (Plan § 1.23). The Confirmation Order approved the appointment of Mr. Huebscher as the Litigation Trustee of the Litigation Trust. *Id.* ¶ 15 (citing Confirmation Order ¶ 4). The Plan became effective on or about March 18, 2021. *Id.* ¶ 16.

On May 19, 2021, the Court entered an Order Modifying Debtor's Plan of Reorganization Pursuant to 11 U.S.C. § 1127(b) (the "Plan Modification Order") [dkt. no. 166]. The Plan Modification Order, among other things, appointed the Litigation Trustee as (1) the Distribution Agent and the Disbursing Agent for Class 4 claims and (2) the Debtor's sole administrator and representative of the Debtor's estate pursuant to Section 1.6 of the Litigation Trust Agreement with respect to all assets to be sold or liquidated pursuant to the Plan. *Id.* ¶ 17 (citing Plan Modification Order at 1–2). The Litigation Trust Agreement, as approved by the Confirmation Order and the Plan Modification Order provides that, among other things, the Litigation Trustee has the power to (1) perform the duties and exercise the powers of a trustee under sections 704 and 1106, including, without limitation, commencing, prosecuting or settling causes of action and (2) protect and enforce the rights to the Litigation Trust assets by any method deemed appropriate. *Id.* ¶ 18 (citing Litigation Trust Agreement § 2.8).

B.    East End Ventures

The East End Ventures are owned 50% by Emil Talel ("Talel") and 50% by the Debtor (collectively, the "East End Members"), both of whom are now deceased. *Id.* ¶ 19. The East End Ventures' operating agreements provide, in relevant part, that "[t]he Company shall be terminated and dissolved upon . . . the dissolution, death, disability, or

incompetency, or resignation of the Managing Members." *Id.* ¶ 20. Further, upon the dissolution of the company, "[t]he Members shall wind up and liquidate the Company by selling the Company's assets and distributing the net proceeds therefrom." *Id.* ¶ 20.

In 2018, the East End Members contacted Bialsky, a builder and developer, concerning a real estate project in Sag Harbor, New York. *See* Objection of Jay Bialsky to Litigation Trustee's Motion (the "Objection") ¶¶ 7–8 [dkt. no. 254]. Bialsky and the East End Members negotiated an agreement pursuant to which a limited liability company known as Sag Harbor Development Holdings LLC ("Sag Harbor Development") was formed. *Id.* ¶ 9. The members of Sag Harbor Development are JAB SH Holdings LLC ("JAB Holdings")—controlled by Bialsky—and East End Ventures—owned and operated by the East End Members. *Id.* ¶ 10. The East End Ventures, in which the Debtor's estate holds a 50% interest, holds a 40% interest in Sag Harbor Development. *See* Litigation Trustee's Reply to the Objection ("Reply") at 2. [dkt. no. 255]. According to the Litigation Trustee, the estate's interest in the East End Ventures' rights and claims in connection with the real estate project in Sag Harbor, New York is potentially the largest asset of the estate. *Id.* It is this equity interest of the estate that the Litigation Trustee seeks to monetize by having himself and the Executor appointed as co-liquidators of the East End Ventures. *Id.* at 3.

C.  The Motion

The Motion seeks entry of an order appointing the Litigation Trustee and the Executor as co-liquidators of East End Ventures and authorizing the Litigation Trustee to liquidate the Debtor's interest in East End Ventures. Motion ¶ 7. Bialsky opposed the Motion and requested that the Court deny the Motion in its entirety. *See generally* Objection. [dkt. no. 254]. In response, the Litigation Trustee filed the Reply. [dkt. no. 255]. Talel's children, Nadia Talal and Alexander Talel (the "Talel Family"), filed an affirmation

in support of the Motion (the "Affirmation"). [dkt. no. 257]. The Executor filed an affidavit in support of the Motion ("Executor's Affidavit"). [dkt. no. 262]. The Court heard oral argument and thereafter took the matter under advisement.

Discussion

### A. Standing

The Litigation Trustee first argues that Bialsky lacks standing to object to the Motion. Reply 3–4. For the following reasons, the Court agrees and concludes that Bialsky does not have standing to object to the Motion. The Objection does not include facts that are sufficient to show that Bialsky is a party in interest under § 1109(b) or that he meets constitutional and prudential standing requirements. Nowhere in his Objection does Bialsky expressly allege that he has or will suffer an actual injury if the co-liquidators are appointed or that he is asserting his own legal rights in voicing objection to the Motion. As he has failed to make the requisite showing, he has not alleged that he has standing to bring any claims or object to the Motion.

#### 1. Legal Principles

"[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). In chapter 11 cases, "[a] party in interest . . . may raise and may appear and be heard on any issue." 11 U.S.C. § 1109(b). But "section 1109(b) does not abrogate constitutional standing requirements—a party in interest must still demonstrate that it meets the general requirements of the standing doctrine, including whether it has alleged a personal stake in the outcome of the proceedings and whether it is asserting its own legal rights and remedies." *In re Heating Oil Partners, LP*, 422 F. App'x 15, 17 (2d Cir. 2011) (citing *Etuk v. Slattery*, 936 F.2d 1433, 1440 (2d Cir. 1991); *see also Warth*, 422 U.S. at 498–

5

99 ("This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."); *see also In re Quigley Co.*, 391 B.R. 695, 702–03 (Bankr. S.D.N.Y. 2008).

Section 1109(b) confers standing on a non-exhaustive list of "parties in interest"—including "the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee." 11 U.S.C. § 1109; *see Savage & Assocs., P.C. v. K & L Gates LLP* (*In re Teligent, Inc.*), 640 F.3d 53, 60 (2d Cir. 2011). The term "party in interest" is not defined by the Bankruptcy Code. *Krys v. Official Comm. of Unsecured Creditors of Refco Inc.* (*In re Refco Inc.*), 505 F.3d 109, 117 (2d Cir. 2007). As a result, "[w]hether a party qualifies as a 'party in interest' is determined on a case-by-case basis, taking into consideration whether that party has a 'sufficient stake' in the outcome of that proceeding, which can include having a pecuniary interest directly affected by the bankruptcy proceeding." *In re Heating Oil Partners*, 422 F. App'x at 17 (quoting *In re Stone Barn Manhattan, LLC,* 405 B.R. 68, 74 (Bankr. S.D.N.Y. 2009)); *In re Reyes*, No. 14-13233 (SMB), 2015 WL 4624156, at *3 (Bankr. S.D.N.Y. Aug. 4, 2015) (noting that because "the phrase [party in interest] must be interpreted on an *ad hoc* basis . . . . an entity may be a party-in-interest with standing for one purpose but lack standing for other purposes.").

Importantly, courts in the Second Circuit have "limited 'party in interest' standing where a party's interest in the proceeding is not a direct one." *In re Innkeepers USA Tr.*, 448 B.R. 131, 141, 143 (Bankr. S.D.N.Y. 2011) (finding an "investor in a creditor" did not have standing); *see In re Tour Train P'ship,* 15 B.R. 401, 402 (Bankr. D. Vt. 1981) (finding a creditor of a debtor's creditor did not have standing); *see also S. Blvd., Inc. v. Martin Paint Stores*, 207 B.R. 57, 61–62 (S.D.N.Y. 1997). Courts typically recognize a direct interest

where an entity has a "financial stake in the outcome of the bankruptcy case." *In re Reyes*, 2015 WL 4624156, at *4 (citing *Savage & Assocs., P.C.*, 640 F.3d at 60). But, in limited circumstances, a movant "with a legal rather than a financial interest in the case" may establish standing to appear "by demonstrating that the filing or pendency of the bankruptcy case impaired [their] legal rights or the ability to perform [their] duties." *Id.*

"'[T]o establish [constitutional] standing, a party must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief.'" *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022) (quoting *Transunion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021)). Prudential standing requires litigants to "assert [their] own legal rights and interests," and prevents a party from establishing standing if their claim to relief rests "on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499. "Prudential limitations on standing are especially important in bankruptcy proceedings which often involve numerous parties who may seek to assert the rights of third-parties for their own benefit*." In re Old Carco LLC*, 500 B.R. 683, 691 (Bankr. S.D.N.Y. 2013); *Kane v. Johns–Manville Corp.* (*In re Johns–Manville Corp.*), 843 F.2d 636, 644 (2d Cir. 1988) ("[P]rudential concerns limiting third-party standing are particularly relevant in the bankruptcy context. Bankruptcy proceedings regularly involve numerous parties, each of whom might find it personally expedient to assert the rights of another party even though that other party is present in the proceedings and is capable of representing himself.").

   2.   Analysis

   The Court finds that Bialsky has failed to advance any evidence or argument sufficient to sustain a claim that he has standing to object to the Motion. His conclusory

allegations do not carry the day and fail to demonstrate that he meets the constitutional and prudential standing requirements or that he is a party in interest under § 1109(b).

Bialsky has not demonstrated that he is a creditor in the Debtor's chapter 11 case or that he holds a membership or direct economic interest in the East End Ventures. At oral argument, Bialsky claimed that he loaned money to, and as a result may be a creditor of, the East End Ventures. The record, however, is devoid of evidence that Bialsky is a creditor of either the Debtor or the East End Ventures. His conclusory statement to the contrary does not suffice for purposes of determining whether he qualifies as a party in interest under § 1109(b). Further, the Objection does not demonstrate that Bialsky will suffer an actual injury if the relief requested in the Motion—the appointment of co-liquidators for the East End Ventures—is granted. It bears repeating that the Objection fails to include facts sufficient to sustain a claim of constitutional and prudential standing—there is no evidence that Bialsky himself has a sufficient stake in the outcome of this proceeding or that he is asserting his own legal rights. Rather, the Objection itself rests on jurisdictional and statutory grounds, *see generally* Objection, and that argument, as discussed below, fares no better.

What Bialsky *does* claim is an interest in JAB Holdings, which in turn has a membership interest in Sag Harbor Development. Objection ¶¶ 10–11. Seemingly, Bialsky would have the Court find that he has standing to object to the appointment of the Litigation Trustee and the Executor as co-liquidators because the East End Ventures are also members of Sag Harbor Development. But, like the entities that were found to lack standing in *In re Innkeepers USA Trust* and *In re Tour Train Partnership*, Bialsky's interest is too remote to qualify him as a "party in interest" with standing to object to the Motion in this chapter 11 case. Bialsky does not hold a financial stake in the East End

Ventures, he is not a creditor of the Debtor's bankruptcy estate, and he has advanced no argument or evidence that he is a beneficiary or creditor of the Talel Estate. *See In re Innkeepers USA Tr.*, 448 B.R. at 141; *S. Blvd., Inc.*, 207 B.R. at 61. As such, Bialsky is not a "party in interest" with standing to object to the appointment of the Litigation Trustee and the Executor as co-liquidators, whose charge will be to monetize the respective membership interests of the Debtor and Talel in the East End Ventures. *See* 11 U.S.C. § 1109; *In re Innkeepers USA Tr.*, 448 B.R. at 141. Because he has failed to advance any argument or evidence that he has a direct financial stake in the Debtor's bankruptcy case, Bialsky lacks standing under Article III and section 1109(b) to object to the Motion. *See In re Copperfield Invs., LLC*, 421 B.R. 604, 611 (Bankr. E.D.N.Y. 2010) (noting that an entity cannot satisfy the standing requirements of Article III or section 1109(b) without a "direct financial stake" or a "right to share in the proceeds . . . or other sufficient financial interest in the outcome.").

Bialsky may very well claim that he has a financial interest in the disposition of East End Ventures' assets as it pertains to Sag Harbor Development. However, the Motion asks that the Litigation Trustee and the Executor be appointed as co-liquidators to monetize the estate's interest in the East End Ventures. The Motion does not seek Court approval of the liquidation or other disposition of any assets of East End Ventures itself. That form of relief may be the next step in the Litigation Trustee's efforts to monetize the estate's interest in the East End Ventures, but it is not before the Court at this juncture. Bialsky may in fact be "deeply concerned" about the eventual disposition of the Debtor and Talel's respective interests in East End Ventures, but that concern does not establish the requisite standing to object to the relief requested in the Motion. *See S. Blvd., Inc.*, 207 B.R. at 61. In sum and substance, Bialsky's relationship to the Debtor's bankruptcy case, and to

the East End Ventures, is too tenuous to support a finding that he has standing to object to the Motion.

Finally, Bialsky has failed to present evidence, or advance an argument, demonstrating that he is asserting his own personal interest. Instead, his claims rest on the legal rights and interests of third parties. *Warth*, 422 U.S. at 499. The Court notes that the East End Members and Class 4 General Unsecured Creditors—the only parties that have a direct stake in the outcome of the Motion—have expressly requested the Court approve the appointment of co-liquidators, and that the Litigation Trustee has characterized Bialsky as "the principal litigation adversary" of this bankruptcy case. Reply at 1; *see Kane*, 843 F.2d at 644–45 (noting that a party does not have standing to assert a third-party's rights when their "interests . . . [are] potentially in conflict" and the rights of the third-party are "already well-represented by the court-appointed legal representative."). Because Bialsky's interests are averse to those of third parties with standing to object, and those third parties are represented in this proceeding, he has failed to establish prudential standing to object to the Motion. *Warth*, 422 U.S. at 499; *Kane*, 843 F.2d at 644–45; *In re Quigley Co., Inc.*, 391 B.R. at 704–05.

Although the Court finds that Bialsky has failed to establish standing, the Court, for the sake of completeness, will address Bialsky's remaining arguments in support of his Objection. For the following reasons the Court concludes that Bialsky failed to advance any evidence or argument sufficient to sustain his claim that this Court lacks jurisdiction and authority to appoint co-liquidators or that such appointment is impermissible under applicable law.

B.  The Bankruptcy Court's Jurisdiction and Authority

1.  The Debtor's Interest in East End Ventures is Property of the Estate

10

Bialsky claims that the East End Ventures are not part of the Debtor's estate because none of the East End Ventures filed statements pursuant to Local Bankruptcy Rule 1074-1, and Debtor's petition and schedules do not indicate that the East End Ventures were included or intended to be included within the Debtor's estate. Objection ¶¶ 31–38. The Litigation Trustee has a different view and claims that the Debtor's interest in the East End Ventures is property of the estate under § 541(a)(1), and the monetization of that interest in the East End Ventures is expressly provided for in the Plan. Reply at 4–5.

The Court agrees with the Litigation Trustee. The Debtor's interest in the East End Ventures is property of the Debtor's bankruptcy estate. "[W]hen a member of an LLC files a bankruptcy petition, his interest in the LLC, and any rights he has under the LLC's operating agreement, becomes property of the estate." *In re Garcia*, 494 B.R. 799, 810 (Bankr. E.D.N.Y. 2013) (citing *In re Dixie Mgmt. & Inv., Ltd. Partners*, 474 B.R. 698, 700 (Bankr. W.D. Ark. 2011)); *see also Manson v. Friedberg*, No. 08 CIV. 3890 RO, 2013 WL 2896971, at *3 (S.D.N.Y. June 13, 2013) ("Whatever legal or equitable interest an individual has in an LLC is personal property within the meaning of the bankruptcy estate under § 541."). Thus, when the Debtor filed his chapter 11 petition, his membership interest in the East End Ventures became property of the estate under § 541. *In re Garcia*, 494 B.R. at 810.

Additionally, Bialsky's claim that the East End Ventures were required to file a corporate resolution pursuant to Local Bankruptcy Rule 1074-1 misses the mark because the East End Ventures are not debtors in this case. Under Local Bankruptcy Rule 1074-1, a corporate resolution authorizing a limited liability company to file a bankruptcy petition is only required if the limited liability company itself is filing for bankruptcy protection. *See* Local Bankruptcy Rule 1074-1 ("A voluntary petition filed by . . . a limited liability company

. . . shall be accompanied by a duly attested statement . . . that the filing is duly authorized."). The case at bar is not the bankruptcy case of the East End Ventures, but rather the chapter 11 case of Michael Maidan, one of the East End Ventures' members. Therefore, the East End Ventures were not required to file a corporate resolution pursuant to Local Bankruptcy Rule 1074-1.

Finally, Bialsky's claim that the Debtor's omission of the East End Ventures from the relevant petition and schedules should remove them from the Debtor's estate is without merit. The Debtor disclosed an interest in East End Ventures LLC in both his chapter 11 petition, and in his Schedule A/B.[4] Further, a debtor cannot remove assets from his bankruptcy estate by failing to disclose their existence. Were that the case, debtors would be free to place assets and interests outside of a bankruptcy court's reach by simply omitting them from their required disclosures. Not only would this undermine a core tenet of the Bankruptcy Code's underlying public policy—the full and fair disclosure of assets—it would overlook the fact that bankruptcy courts are often called on to recognize that a debtor's undisclosed assets are property of the estate. *See e.g., Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) ("Because full disclosure by debtors is essential to the proper functioning of the bankruptcy system, the Bankruptcy Code severely penalizes debtors who fail to disclose assets: While properly scheduled estate property that has not been administered by the trustee normally returns to the debtor when the

---

[4] Debtor's chapter 11 petition [dkt. no. 1] lists "East End Ventures LLC" among Debtor's "business names used in the last 8 years," and Schedule A/B [dkt. no 6] lists "East End Ventures LLC" among Debtor's "[n]on-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture."

bankruptcy court closes the case, undisclosed assets automatically remain property of the estate after the case is closed.").[5]

Accordingly, for these reasons, the Court concludes that the Debtor's interest in the East End Ventures became property of the estate upon the filing of his chapter 11 case. *See id.*

### 2. The Bankruptcy Court's Exercise of Jurisdiction Over the Executor

Bialsky claims that the bankruptcy court does not have personal jurisdiction over the Executor. The basis of this argument is a single sentence in the Objection, which states that "[t]o the best of our knowledge, Emil Talel was not a Debtor before the Court, nor was his estate." Objection ¶ 18. Notably absent from the Objection is any authority to support Bialsky's apparent claim that this Court does not have personal jurisdiction over the Executor or that he can raise an objection to personal jurisdiction on behalf of the Executor. That argument is more properly the province of the Executor, who notably has not lodged any jurisdictional objection. To the contrary, as noted below, the Executor has expressly consented to the jurisdiction of this Court.

Bialsky also argues that any request for the appointment of the Executor as a co-liquidator must be brought in the Surrogates Court or in the Supreme Court of the State of New York. *Id.* ¶ 27, 36. In opposition, the Talel Family argues that this Court has jurisdiction over the Executor because he has "submitted himself to the [bankruptcy court's] jurisdiction by consenting to his appointment as a co-liquidating trustee." Affirmation ¶ 12. The Talel Family also claims that the Executor need not seek appointment as a co-liquidator in the Surrogates Court because his appointment as executor of the Talel Estate

---

[5] Despite the arguments lodged in the Objection, at oral argument, Bialsky's counsel appeared to concede that the Debtor's interest in the East End Ventures is property of the bankruptcy estate.

gives him broad powers of administration, which can be exercised without prior court approval. *Id.* ¶ 17–19.

The Court agrees with the Talel Family and finds Bialsky's objection unavailing for the following reasons. First, an entity or an individual may consent—or subject itself—to the bankruptcy court's jurisdiction by actively participating in the bankruptcy case. *See In re Petrie Retail, Inc.*, 304 F.3d 223, 231 (2d Cir. 2002) (noting that a creditor subjected itself to the bankruptcy court's jurisdiction by appearing in the debtor's bankruptcy case, filing motions with the bankruptcy court, objecting to the debtor's motions, and failing to object to the bankruptcy court's personal jurisdiction). Here, the Executor's participation in the case is more than sufficient for the Court to exercise personal jurisdiction over him, including: (1) filing the Affidavit; (2) participating in the hearing held on the Motion; and (3) being named as a defendant in an adversary proceeding related to the Debtor's bankruptcy case (*Maidan v. Maidan et al*, 8-21-08131-las). Of significance, the Executor has willingly consented to the bankruptcy court's exercise of *in personam* jurisdiction by stating in the Affidavit that he would accept an appointment as co-liquidating trustee of the East End Ventures as proposed in the Motion. *See* Executor's Affidavit ¶ 3. Having consented to this Court's jurisdiction, as the Executor states he has, the Court need not conduct further jurisdictional inquiry. *See In re Soundview Elite Ltd.*, 594 B.R. 108, 119 n.3 (Bankr. S.D.N.Y. 2018) ("[I]t is facially implausible that a party would implicitly consent to final judgment by a bankruptcy court while at the same time objecting to the threshold issue of whether the same court has personal jurisdiction over the party."); *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 685 (2015) (noting that, in determining a party's consent to the bankruptcy court's jurisdiction, "the key inquiry is whether the litigant or counsel was

made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before" the bankruptcy court).

Second, the Executor need not seek additional authorization from the New York Surrogates Court to accept appointment as a co-liquidator. As the Talel Family points out, an estate fiduciary may participate in legal proceedings outside of the Surrogate's Court. *See Bloom v. Emden*, No. 19-CV-10155 (RA), 2022 WL 799096, at *1 (S.D.N.Y. Mar. 16, 2022) ("[E]xecutors of decedent['s] [estate] . . . filed this action [in the bankruptcy court] seeking a declaratory judgment"); *Est. of Gilbert by Gilbert v. Hackett*, 62 Misc. 3d 691 (N.Y. Sup. Ct. 2018), *aff'd sub nom. Gilbert v. Hackett*, 183 A.D.3d 654 (2020) ("[A]ction by the [decedent's] representatives" in Suffolk County Supreme Court seeking damages in connection with decedent's disappearance and death).

As further support for its position, the Talel Family cites to the New York Estates Powers and Trusts Law ("EPTL") which grants an executor the power to dispose of a decedent's interest in property, and to settle, contest, or compromise claims in favor of the decedent's estate. EPTL § 11-1 (b)(13). The Talel Family notes that Surrogate's Courts have "recognized the statutory powers afforded to fiduciaries and admonished fiduciaries to exercise the authority given to them and not seek court approval. . . concerning matters dealing with management of an estate unless there was a real need." *In re Shaffer*, 2007 NYLJ LEXIS 4443, at *1–2 (Sur Ct., Kings County July 24, 2007). Here, because the Executor has already been appointed by the Surrogate's Court, he may wield this broad power to dispose of Talel's assets by accepting the bankruptcy court's appointment as a co-liquidator—regardless of the forum the disposition takes place in, and without additional approval of the Surrogate's Court. *See id.*; EPTL § 11-1 (b)(13).

C.  New York Limited Liability Company Law

1. The East End Ventures Are in Dissolution

Before a liquidating trustee may be appointed, it must be demonstrated that the East End Ventures are in dissolution. NY LLCL § 703(a). Under New York Law, a limited liability company is properly in dissolution, "and its affairs shall be wound up," upon the occurrence of an event of dissolution provided for in the limited liability company's operating agreement. NY LLCL 701(a)(2); *see also In re All Year Holdings Ltd.*, 645 B.R. 10, 29 (Bankr. S.D.N.Y. 2022).

The Litigation Trustee claims that the East End Ventures are properly in dissolution under the terms of their individual operating agreements. Motion ¶ 23. Bialsky claims that the East End Ventures are not in dissolution because their operating agreements "provide[] that the entities do not dissolve on the death of (one) member." Objection ¶ 16 (citing Section 12.2 of the Operating Agreements). Therefore, according to Bialsky, because Talel predeceased the Debtor, upon Talel's death his estate became an assignee with only economic rights under New York's limited liability company law, but the East End Ventures did not enter dissolution. *Id.* ¶¶ 16, 20. For the following reasons, the Court disagrees with Bialsky and finds that the East End Ventures are in dissolution.

Under New York's limited liability company law, "*[u]nless otherwise provided in the operating agreement*, the death . . . of any member shall not cause the limited liability company to be dissolved or its affairs to be wound up." NY LLCL § 701(b) (emphasis added). NY LLCL § 701(b)'s "clear language defer[s] to the operating agreement on matters of termination *and* dissolution." *In re All Year Holdings*, 645 B.R. at 29 (emphasis in original); *see Sealy v. Clifton L.L.C.*, 34 Misc. 3d 266, 272 (Sur. Ct. 2011), *aff'd sub nom. Sealy v. Clifton, LLC*, 106 A.D.3d 981 (2013). Here, the East End Ventures' operating agreements

provide for the dissolution of each entity upon the death of the managing members,

identified as the Debtor and Talel in each operating agreement.[6] Because both the Debtor

and Talel are deceased, the East End Ventures are in dissolution pursuant to the terms of

their respective operating agreements. *See In re All Year Holdings*, 645 B.R. at 29.[7]

> 2.  The Bankruptcy Court has the Authority to Appoint a Liquidating Trustee under
>     NY LLCL § 703

The Objection also questions whether a bankruptcy court has the authority to

appoint a liquidating trustee under NY LLCL § 703. Objection ¶¶ 27–30. In reply, the

Litigation Trustee claims that a bankruptcy court does in fact have the authority to appoint

a liquidating trustee under New York's limited liability company law. In support of this

argument, the Litigation Trustee cites *In re Futterman*, wherein the bankruptcy court for

the Southern District of New York observed that it had the discretion to appoint a

liquidating trustee if the company in question was properly in dissolution—though in that

case the bankruptcy court chose not to do so. Reply at 6 (citing *In re Futterman*, 584 B.R.

609, 625 (Bankr. S.D.N.Y. 2018)). Bialsky, for his part, claims that NY LLCL § 703(a) vests

exclusive authority to appoint a liquidating trustee in the New York State Supreme Court.

Objection ¶ 27. Further, Bialsky claims that *In re Futterman* is inapplicable to this case

because, there, the debtor was still alive during the pendency of the bankruptcy

proceedings, and was alleged by a creditor to have committed fraud, mismanaged the

---

[6] The operating agreements of East End Ventures LLC, East End Ventures II LLC, and East End Ventures III LLC are identical in this regard: Exhibit A to each operating agreement identifies Michael Maidan and Emil Talel as 50% co-owners of each entity, and Section 12.1 of each operating agreement expressly provides for the termination and dissolution of the entity "upon . . . death . . . of the Managing Members." Further, as defined by Article 1 of each operating agreement, "Managing Members" means Michael Maidan and Emil Talel.

[7] The Objection appears to argue both that the East End Ventures are not in dissolution (Objection ¶¶ 14–16) while also acknowledging that the East End Ventures *are* in dissolution (Objection ¶ 24). It is irrelevant whether the Objection is self-contradictory because, pursuant to the terms of the East End Ventures respective operating agreements, each entity is properly in dissolution.

company, and breached his fiduciary duties. *Id.* ¶ 28. The Court again disagrees with

Bialsky and, for the following reasons, finds that it has the authority to appoint a

liquidating trustee under the relevant provisions of New York's Limited Liability Company

Law.

New York's limited liability company law provides that "[u]pon cause shown, the

supreme court in the judicial district in which the office of the limited liability company is

located . . . may appoint a receiver or liquidating trustee." NY LLCL § 703. The Litigation

Trustee correctly points out, as the court observed in *In re Futterman*, that the bankruptcy

court may appoint a liquidating trustee under New York's Limited Liability Company Law.

*See In re Futterman,* 584 B.R. at 625 ("In such a dissolution, the [bankruptcy court] may

appoint a liquidating trustee or a receiver, but it is not required to do so."). Further support

for the bankruptcy court's authority to appoint a liquidating trustee is found in the actions

of the District Court for the Southern District of New York and the Bankruptcy Court for

the Eastern District of Virginia, applying the limited liability company laws of Delaware

and Virginia respectively, both of which contain similar provisions and language regarding

the appointment of a liquidating trustee. *See Phyto Tech Corp. v. Givaudan SA*, No. 1:19-

CV-09033, 2020 WL 468871, at *1 (S.D.N.Y. Jan. 29, 2020) (appointing a liquidating trustee

under 6 Del. C. § 18-803(a)); *In re Williams*, 455 B.R. 485, 502 (Bankr. E.D. Va. 2011)

("[T]he [Bankruptcy] Court has the authority under Virginia law to appoint a liquidating

trustee.").

Like New York's statute, both Delaware limited liability company law and Virginia

limited liability company law expressly provide that a state court has the power to appoint

a liquidating trustee. *See* Del. Code Ann. tit. 6, § 18-803 (West) ("[T]he Court of Chancery,

upon cause shown, may wind up the limited liability company's affairs upon application of

any member or manager, or the member's personal representative or assignee, and in connection therewith, may appoint a liquidating trustee."); Va. Code Ann. § 13.1-1048 (West) ("[T]he circuit court of the locality in which the registered office of the limited liability company is located, on cause shown, may wind up the limited liability company's affairs on application of any member, his legal representative, or assignee, and in connection therewith, may appoint one or more liquidating trustees.").

While both *In re Futterman* and *In re Williams* involved the removal of a state court action to the bankruptcy court, and here the present action was not removed to the bankruptcy court, several factors weigh in favor of the bankruptcy court's authority to appoint a liquidating trustee under NY LLCL § 703. First, it is important to note that the *In re Futterman* court's acknowledged authority to appoint a liquidating trustee was not premised on the action's removal, but only on the fact that the entity was properly in dissolution. *See In re Futterman*, 584 B.R. at 625. Further, at least one court in the Second Circuit has appointed a liquidating trustee, under Delaware's limited liability company law, in an action originally filed in the federal district court—not in the Delaware Court of Chancery as dictated by Delaware's statute. *See Phyto Tech Corp.*, 2020 WL 468871, at *1.

The bankruptcy court in *In re Williams* stated that, by virtue of the notice of removal filed in the case, it stood "in the stead of" the statutorily enumerated state court, which was explicitly empowered to appoint a liquidating trustee. 455 B.R. at 502. But, importantly, the *In re Williams* court acknowledged that its *authority* to appoint a liquidating trustee stemmed from the members' request that the court wind up the limited liability company's affairs and appoint a liquidating trustee to investigate and distribute the entity's assets. *Id.* at 502. The same situation arises in the instant case, where the Litigation Trustee and the Executor have asked this Court to appoint co-liquidators so that

19

they may marshal, liquidate, and distribute the assets of the East End Ventures. Motion ¶¶ 5–7.

It is also important to note that, unlike in the context of an action that is removed to a bankruptcy court, here, the parties to the Motion have chosen the bankruptcy court as the forum for this relief and the Executor has willingly consented to the bankruptcy court's jurisdiction. Although bankruptcy court jurisdiction is not limitless, the Supreme Court has observed that Congress intended to grant bankruptcy courts "comprehensive jurisdiction . . . so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (citations omitted). Thus, the appointment of a liquidating trustee under NY LLCL § 703(a) falls squarely within the bankruptcy court's authority to adjudicate "more than simply proceedings involving the property of the debtor or the estate." *Id.* at 300.

Importantly, "[a] bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization." *In re Petrie Retail, Inc.*, 304 F.3d at 230 (citing *In re Chateaugay Corp.*, 213 B.R. 633, 640 (S.D.N.Y. 1997)). Here, the Plan expressly contemplates that there may be assets or funds recovered from the East End Ventures and includes any such recovery among the assets Class 4 General Unsecured Creditors will receive. Motion ¶ 14 (citing Plan § 3.2(d)). Further, the Plan was confirmed pursuant to both the Confirmation Order and the Plan Modification Order. Because the disposition of the Debtor's interest in the East End Ventures was explicitly provided for by the Plan and approved by the Confirmation Order and Plan Modification Order, the Court has jurisdiction over the proceeding, and the authority to appoint a liquidating trustee to effectuate the terms of the Plan. *See In re Petrie Retail, Inc.*, 304 F.3d at 230.

### 3. Cause to Appoint a Liquidating Trustee Exists

The Litigation Trustee claims that cause to appoint co-liquidators exists because, since both the Debtor and Talel are deceased, the appointment of a liquidation trustee is "necessary to liquidate the dissolved entities and to recover value on behalf of the estate." Motion ¶ 27.

A liquidation trustee may be appointed to wind up a limited liability company's affairs "[u]pon cause shown." NY LLCL § 703(a). Cause to appoint a liquidating trustee is often found where the relationship between members makes it difficult—or impossible—to wind up a limited liability company's affairs. *See In re Futterman*, 584 B.R. at 627 ("Courts have found cause where parties could not agree on fundamental matters regarding the operation of a company, including the refinancing of debts, and were suing each other over alleged financial improprieties."); *see also Fakiris v. Gusmar Enterprises, LLC*, 53 Misc. 3d 1215(A) at *5 (N.Y. Sup. Ct. 2016) ("managerial dysfunction"); *Mizrahi v. Cohen*, 41 Misc. 3d 1239(A) at *1–2 (N.Y. Sup. 2013) ("extraordinary acrimony between the parties"). The common thread among these situations is that a supervening event has rendered a limited liability company's members incapable of winding up the entity's affairs in accordance with the statute's mandate. *Mizrahi*, 41 Misc. 3d at 1 ("Upon dissolution of a limited liability company, the 'affairs' of the company must be wound up. This includes satisfaction of the liabilities of the company."). Here, the death of the East End Members serves as "cause" to appoint a liquidating trustee in the same way that managerial dysfunction or acrimony would—the East End Members cannot undertake their statutory duty to wind up the East End Ventures. NY LLCL § 703.

<u>Conclusion</u>

For the forgoing reasons, the Motion is granted. The Litigation Trustee and the Executor are hereby appointed as co-liquidators of the respective interests of the Debtor and Talel in the East End Ventures.

So Ordered.



Dated: February 23, 2023
      Central Islip, New York

**Louis A. Scarcella**
**United States Bankruptcy Judge**